IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | |
|---|---|
| **KIRK SPALDING,** | * |
| | * |
| Plaintiff, | * |
| | *    Civil No. TMD 14-637 |
| v. | * |
| | * |
| | * |
| **CAROLYN W. COLVIN,** | * |
| **Acting Commissioner of Social Security,** | * |
| | * |
| Defendant. | * |
| | *********** |

**MEMORANDUM OPINION GRANTING DEFENDANT'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

Kirk Spalding ("Plaintiff") seeks judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying his applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment (ECF No. 21) and Defendant's Motion for Summary Judgment (ECF No. 23).[1] Plaintiff contends that the administrative record does not contain substantial evidence to support the Commissioner's decision that he is not disabled. No hearing is necessary. L.R. 105.6. For the reasons that follow, Defendant's Motion for Summary Judgment (ECF No. 23) is **GRANTED**, Plaintiff's Motion for Summary Judgment (ECF No. 21) is **DENIED**, and the Commissioner's final decision is **AFFIRMED**.

---

[1] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002). For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

# I

## Background

Plaintiff was born in 1967, has a high-school education, and previously worked as an owner and operator of an excavating company, an iron worker, and a carpenter sheet worker. R. at 19, 170.  On February 6, 2011, Plaintiff protectively applied for DIB and SSI, alleging disability beginning on January 1, 2009, due to diverticulitis, spondylosis, arthritis, and hernia. R. at 62, 148-56, 165-66, 169.  The Commissioner denied Plaintiff's applications initially and again on reconsideration, so Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  R. at 58-81, 84-89, 106.  On July 20, 2012, ALJ Thomas Mercer Ray held a hearing in Washington, D.C., at which Plaintiff and a vocational expert ("VE") testified.  R. at 27-57.  On August 29, 2012, the ALJ issued a decision finding Plaintiff not disabled since the alleged onset date of disability of January 1, 2009.  R. at 10-26.  Plaintiff sought review of this decision by the Appeals Council, which denied Plaintiff's request for review on January 3, 2014.  R. at 1-6, 9. The ALJ's decision thus became the final decision of the Commissioner.  *See* 20 C.F.R. §§ 404.981, 416.1481; *see also Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 2083 (2000).

On March 6, 2014, Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision.  Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment.  The case subsequently was reassigned to the undersigned.  The parties have briefed the issues, and the matter is now fully submitted.

## II

## **Summary of Evidence**

The Court reviews the relevant evidence here and in Part VI below.

**A.     State Agency Medical Consultants**

On March 31, 2011, a state agency consultant, W. Hakkarinen, M.D., assessed Plaintiff's physical residual functional capacity ("RFC").  R. at 64-65, 74-75.  Dr. Hakkarinen opined that Plaintiff could (1) lift and/or carry 10 pounds occasionally and fewer than 10 pounds frequently; (2) stand and/or walk for a total of two hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling.  R. at 64, 74.  Plaintiff occasionally could balance, stoop, kneel, crouch, crawl, and climb ramps and stairs (but never ladders, ropes, or scaffolds).  R. at 64-65, 74-75.  Plaintiff had no manipulative, visual, communicative, or environmental limitations, however.  R. at 65, 75.

On September 20, 2011, another state agency medical consultant, Subhash Gajendragadkar, M.D., also assessed Plaintiff's physical RFC.  R. at 299-306.  Dr. Gajendragadkar opined that Plaintiff could (1) lift and/or carry 20 pounds occasionally and 10 pounds frequently; (2) stand and/or walk for a total of about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling. R. at 300.  Plaintiff occasionally could balance, stoop, kneel, crouch, crawl, and climb ramps and stairs (but never ladders, ropes, or scaffolds).  R. at 301.  Although he had no manipulative, visual, or communicative limitations, Plaintiff was to avoid concentrated exposure to extreme cold, vibration, and hazards.  R. at 302-03.

B.  **Hearing Testimony**

    1.  **Plaintiff's Testimony**

In his decision, the ALJ reviewed Plaintiff's testimony:

> [Plaintiff] alleged at the hearing that he is disabled since January 2009 due to his back and hip pain. He alleged that he lives independently and uses a crutch or cane to walk, drives occasionally, and has great difficulty bending forward. He further alleged that his medications include drowsiness and inability to concentrate, and he consequently takes many short naps throughout the day.

R. at 16; *see* R. at 35-47.

    2.  **VE Testimony**

According to the VE, a hypothetical individual with Plaintiff's same age, education, work experience, and the RFC outlined below in Part III could perform the sedentary[2] jobs of security worker, small-parts inserter, or quality-control worker. R. at 51-53. An individual who would be off task 20% of the time and who would need to be absent from work two days per month could not perform any full-time work. R. at 54.

## III

### Summary of ALJ's Decision

On August 29, 2012, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the alleged onset date of disability of January 1, 2009; and (2) had an impairment or a combination of impairments considered to be "severe" on the basis of the requirements in the Code of Federal Regulations; but (3) did not have an impairment or a combination of impairments meeting or equaling one of the impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1; and (4) was unable to perform his past relevant work; but (5) could

---

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. §§ 404.1567(a), 416.967(a).

perform other work in the national economy, such as a security worker, quality-control worker, or small-parts inserter. R. at 15-20. The ALJ accordingly found that he was not disabled from January 1, 2009, through the date of the decision. R. at 20.

In so finding, the ALJ noted that Plaintiff's "hip condition was considered under applicable listing 1.02. However, the medical record does not demonstrate that [Plaintiff's] hip has been characterized by any gross anatomical deformity, such as subluxation, contracture, bony or fibrous ankylosis, or instability." R. at 16. The ALJ then found that Plaintiff had the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that he can no more than occasionally climb stairs and ramps, balance, stoop, kneel, crouch, and crawl; he is unable to climb ladders, ropes, and scaffolds; he can no more than frequently operate a motor vehicle or be exposed to extreme cold, vibration, unprotected heights, and moving mechanical parts; and he requires a cane or crutch to ambulate.

R. at 16 (footnote omitted). The ALJ's RFC assessment was "based on the findings of Dr. Hakkarinen, with additional provisions included in consideration of [Plaintiff's] driving limitations, need for use of a cane, and potential drowsiness associated with his medication." R. at 19.

Regarding Plaintiff's credibility, the ALJ found that his "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." R. at 19. The ALJ found that Plaintiff's

> alleged limitations are simply not consistent with the objective medical record. Recent physical examination findings were fairly normal, and he has never been advised to undergo surgery for his back. He has experienced significant pain relief from certain treatments, such as lumbar epidural block, yet has not pursued further such treatments. He was recommended physical therapy multiple times,

5

but the record does not show that he has engaged in that. Thus, the undersigned concluded that his pain may not be as severe as he has alleged, considering that he has not pursued treatment options that have worked for him in the past, and has failed to follow doctor's recommendations.

R. at 19.

## IV

## Disability Determinations and Burden of Proof

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-380 (2003). "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further." *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of production and proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).[3]

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). RFC is a measurement of the most a claimant can do despite his or her limitations. *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R.

---

[3] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

§§ 404.1545(a)(1), 416.945(a)(1).  The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."  20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).  The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations.  *See id.*  If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled.  *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience.  *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012).  The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy.  *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not disabled.  If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## V

## **Substantial Evidence Standard**

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.* The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Hancock*, 667 F.3d at 472. Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

## VI

### Discussion

Plaintiff contends that the ALJ erred in finding at step three of the sequential evaluation process that his impairments did not meet or medically equal Listing 1.02 in 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.02 (R. at 15-16). Pl.'s Mem. Supp. Mot. Summ. J. 3-7, ECF No. 21-1. He also maintains that the ALJ erroneously assessed his subjective complaints. *Id.* at 7-12. Plaintiff's arguments are unavailing for the reasons discussed below.

**A.   ALJ's Step-Three Determination Regarding Listing 1.02**

"The Social Security Administration has promulgated regulations containing 'listings of physical and mental impairments which, if met, are conclusive on the issue of disability.' A claimant is entitled to a conclusive presumption that he is impaired if he can show that his condition 'meets or equals the listed impairments.'" *Radford*, 734 F.3d at 291 (citation omitted); *see* 20 C.F.R. pt. 404, subpt. P, app. 1. "In evaluating a claimant's impairment, an ALJ must fully analyze whether a claimant's impairment meets or equals a 'Listing' where there is factual support that a listing could be met." *Huntington v. Apfel*, 101 F. Supp. 2d 384, 390 (D. Md. 2000) (citing *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986)). However, "[u]nder *Cook*, the duty of identification of relevant listed impairments and comparison of symptoms to Listing criteria is only triggered if there is ample evidence in the record to support a determination that the claimant's impairment meets or equals one of the listed impairments." *Ketcher v. Apfel*, 68 F. Supp. 2d 629, 645 (D. Md. 1999). "Neither the Social Security law nor logic commands an ALJ to discuss all or any of the listed impairments without some significant indication in the record that the claimant suffers from that impairment." *Id.*

Moreover, "[f]or a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S. Ct. 885, 891 (1990). The claimant bears the burden of demonstrating that his impairment meets or equals a listed impairment. *Kellough v. Heckler*, 785 F.2d 1147, 1152 (4th Cir.1986). "[T]he ALJ is not required to give controlling weight to a treating physician's opinion on the ultimate issue of disability." *Bruette v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-12-1972, 2013 WL 2181192, at *4 (D. Md. May 17, 2013) (citing 20 C.F.R. § 404.1527(d)(2); Social Security Ruling 96-5p).

Listing 1.02 provides:

*Major dysfunction of a joint(s) (due to any cause):* Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:

A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;

or

B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.02.

"Inability to ambulate effectively" is defined as follows:

b. *What We Mean by Inability To Ambulate Effectively*

(1) *Definition.* Inability to ambulate effectively means an extreme limitation of the ability to walk; *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general

>   definition because the individual has the use of only one upper extremity due to amputation of a hand.)
>
>   (2) *To ambulate effectively*, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00(B)(2)(b).

Plaintiff maintains that the ALJ erred when he found that "the medical record does not demonstrate that [Plaintiff's] hip has been characterized by any gross anatomical deformity, such as subluxation, contracture, bony or fibrous ankylosis, or instability" (R. at 16). Pl.'s Mem. Supp. Mot. Summ. J. 4, ECF No. 21-1. Plaintiff points to an X-ray report dated July 22, 2010, revealing "severe osteoarthritis change of the right hip with severe joint space narrowing and large spur formation at its inferior aspect." R. at 263. "The acetabulum is shallow with uncovering of the right femoral head, likely to indicate femoral acetabular impingement with resultant osteoarthritis." R. at 263. "There is mild to moderate osteoarthritic change of the left hip." R. at 263. Plaintiff also points to a right hip arthrography on January 11, 2011, revealing severe degenerative change. R. at 238. Dr. Hakkarinen, the state agency medical consultant, did not find in March 2011, however, that either Listing 1.02 or Listing 1.04 was met. R. at 63. Although Plaintiff points to evidence of joint space narrowing, he has not met his burden to show that the osteoarthritic changes in his hips rise to the level of a gross anatomical deformity, such as subluxation (an incomplete or partial dislocation of a joint), contracture, bony or fibrous

ankylosis (complete immobility caused by the union of the bones of a joint by proliferation of bones cells), or instability.

Plaintiff's reliance on *Cook v. Heckler*, 783 F.2d 1168 (4th Cir. 1986), is unavailing. There, the ALJ had determined that the claimant's arthritic impairment did not meet or equal the severity the requirements of any of the impairments listed under 20 C.F.R. pt. 404, subp. P, app. 1, § 1.01. *Cook*, 783 F.2d at 1172-73. The court held that the ALJ should have identified the relevant listed impairments under § 1.01 and then should have compared each of the listed criteria to the evidence of the claimant's symptoms. *Id.* at 1173. However, as noted above, "the duty of identification of relevant listed impairments and comparison of symptoms to Listing criteria is only triggered if there is ample evidence in the record to support a determination that the claimant's impairment meets or equals one of the listed impairments." *Ketcher*, 68 F. Supp. 2d at 645. In any event, the ALJ in this case specifically considered Plaintiff's impairments under Listings 1.02 and 1.04. R. at 15-16. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." *Mastro v. Apfel*, 270 F.3d 171, 179 (4th Cir. 2001) (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)).

Moreover, Plaintiff argues to no avail that he has demonstrated an inability to ambulate effectively. Pl.'s Mem. Supp. Mot. Summ. J. 5, ECF No. 21-1. Although he points to his function report in which he alleges that he was able to walk only 70 feet before needing to stop and rest (R. at 182), Plaintiff also reported that he was able to shop weekly for groceries (R. at 180). He also did not use a walker or two canes. *See Fike v. Comm'r, Soc. Sec.*, Civil Case No. CCB-13-1539, 2014 WL 1464341, at *4 (D. Md. Apr. 14, 2014). Although Plaintiff points to his use of a crutch to ambulate in July 2012, more than five months after his hip replacement surgery

(R. at 42), Plaintiff points to nothing in the record to demonstrate that this need was expected to be permanent or last at least twelve continuous months. *See Price v. Colvin*, Civil Action No. TMD 12-2655, 2013 WL 6528906, at *5 (D. Md. Dec. 11, 2013). Substantial evidence thus supports the ALJ's determination that Plaintiff did not meet or medically equal Listing 1.02.

**B.     ALJ's Credibility Determination**

Plaintiff next maintains that the ALJ erred in assessing his subjective complaints. Pl.'s Mem. Supp. Mot. Summ. J. 7-12, ECF No. 21-1. He contends that the ALJ erred in determining his RFC before assessing his credibility. *Id.* at 9-10. Indeed, the ALJ's finding in his decision that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [ALJ's RFC] assessment" (R. at 19) "'gets things backwards' by implying 'that ability to work is determined first and is then used to determine the claimant's credibility.'" *Mascio v. Colvin*, 780 F.3d 632, 639 (4th Cir. 2015) (quoting *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012) (Posner, J.)). Rather, the ALJ should compare the claimant's alleged functional limitations from pain to the other evidence in the record, not to the claimant's RFC. *See id.* "[A] claimant's pain and residual functional capacity are not separate assessments to be compared with each other. Rather, an ALJ is required to consider a claimant's pain as part of his analysis of residual functional capacity." *Id.*

In this case, however, the ALJ's use of the problematic boilerplate language does not require remand because the ALJ "properly analyzed [Plaintiff's] credibility elsewhere." *Id.* at 639; *see, e.g.*, *Sevens v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-14-1900, 2015 WL 2402821, at *2 (D. Md. May 19, 2015). The Fourth Circuit recently reiterated the following standard in

evaluating a claimant's complaints of pain or other symptoms. *Dunn v. Colvin*, 607 F. App'x 264, 272-73 (4th Cir. 2015). Whether "a person is disabled by pain or other symptoms is a two-step process. First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 272 (quoting *Craig*, 76 F.3d at 594). "At this stage of the inquiry, the pain claimed is not directly at issue; the focus is instead on establishing a determinable underlying impairment—a statutory requirement for entitlement to benefits—which could reasonably be expected to be the cause of the disabling pain asserted by the claimant." *Id.* at 272-73 (quoting *Craig*, 76 F.3d at 594). Second, after the first inquiry is complete, the ALJ must evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work." *Craig*, 76 F.3d at 595; *see* 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1). "[T]his evaluation must take into account not only the claimant's statements about her pain, but also 'all the available evidence,' including the claimant's medical history, medical signs, and laboratory findings, any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.) . . . ." *Craig*, 76 F.3d at 595 (citation omitted); *see* 20 C.F.R. §§ 404.1529(c)(1)-(2), 416.929(c)(1)-(2). The ALJ must also take into account "any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it." *Craig*, 76 F.3d at 595; *see* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see* Social Security Ruling[4] ("SSR") 96-7p, 1996 WL 374186, at *3 (July 2, 1996).

---

[4] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security

Here, the ALJ noted that, "whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record." R. at 16. Contrary to Plaintiff's assertion, the ALJ did not require objective evidence to substantiate the intensity, persistence, and limiting effects of his pain.

> Yet while "a claimant's allegations about [his] pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges [he] suffers."

*Stitely v. Colvin*, __ F. App'x __, No. 14-2302, 2015 WL 4621292, at *2 (4th Cir. Aug. 4, 2015) (per curiam) (alteration in original) (quoting *Craig*, 76 F.3d at 595).

> [T]here must be . . . a medical impairment . . . which, when considered with all evidence . . . (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability.

42 U.S.C. § 423(d)(5)(A). The ALJ in this case found that Plaintiff's "alleged limitations are simply not consistent with the objective medical record" (R. at 19), which the ALJ reviewed in his decision (R. at 17-19). "[I]t is appropriate for the ALJ to consider the conservative nature of a plaintiff's treatment—among other factors—in judging the credibility of the plaintiff." *Dunn*, 607 F. App'x at 273. The ALJ noted that Plaintiff "experienced significant pain relief from certain treatments, such as lumbar epidural block, yet has not pursued further such treatments."

---

Administration. *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S. Ct. 1532, 1534 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." *Pass*, 65 F.3d at 1204 n.3.

R. at 19; *see* R. at 268 (noting in March 2011 that Plaintiff "responded quite favorably' to lumbar epidural block). In July 2011, Plaintiff reported that his treatment regimen improved his function. R. at 318. In September 2011, Plaintiff reported that his injection apparently helped. R. at 314. "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) (per curiam). Given the conservative treatment of pain and its apparent success, the ALJ properly discounted Plaintiff's subjective complaints. *See Jenkins v. Chater*, 76 F.3d 231, 233 (8th Cir. 1996).

Furthermore, Plaintiff's non-compliance with recommended physical therapy (R. at 370) was a factor that the ALJ appropriately considered in determining his credibility. *See Dunn*, 607 F. App'x at 275-76; *see also Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) ("A failure to follow a recommended course of treatment also weighs against a claimant's credibility."); *Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir. 2001). The ALJ thus reasonably found that Plaintiff's "pain may not be as severe as he has alleged, considering that he has not pursued treatment options that have worked for him in the past, and has failed to follow doctor's [sic] recommendations." R. at 19.

In sum, substantial evidence supports the decision of the ALJ, who applied the correct legal standards here. Thus, Defendant's Motion for Summary Judgment is **GRANTED**, Plaintiff's Motion for Summary Judgment is **DENIED**, and the Commissioner's final decision is **AFFIRMED**.

## VII

### Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 23) is **GRANTED**. Plaintiff's Motion for Summary Judgment (ECF No. 21) is **DENIED**. The Commissioner's final decision is **AFFIRMED**. A separate order shall issue.

Date: September 21, 2015                                    /s/
                                                            Thomas M. DiGirolamo
                                                            United States Magistrate Judge